After almost an entire year had passed and Stavis still had not come clean and returned the money, Godoy sent one last letter to all of the defendants named in this suit. Within this letter, dated June 9, 2014, Godoy gave notice that: "If the $100,000 taken from Attorney Steven R. Kartagener by Attorney Roger L. Stavis (an employee and member of Gallett Dreyer & Berkey, LLP), without my permission and outside of our respective contracts, is not returned to me within 30-days of the date of this letter, that I am going to file suit against your firm (collectively), as well as Roger L. Stavis, and Steven R. Kartagener, asserting: (1) Breach of Contract; (2) Breach of Fiduciary Duty; and (3) Malpractice; requesting compensatory and punitive damages in the total amount of $500,000." Godoy then went through each of the foregoing exhibits clearly showing that Stavis was caught red-handed in a carefully calculated scheme to defraud the defendants. (See 6/9/14 Letter of Intent, attached Exhibit P).

Incredibly, in an act of panic and desperation, Stavis e-mailed Al Kassar where he [again] tries to make it out like Godoy is just now claiming that the $100,000 retainer paid to Kartagener was his, and asking Al Kassar once again, like he had not already been told numerous times over the course of 5 years, whether the money belonged to Godoy. Stavis also again misrepresents the facts as being that he was requested to represent Godoy in the last minute, like he had not already agreed and been paid per the December 9, 2008 contract to jointly represent both Godoy and Al Kassar, which was [prior] to Godoy's decision to hire an additional [third] lawyer for appeal. However, Al Kassar once again went through the pains of setting Stavis straight, stating: "In reply to your question, to be honest and clear, when Felipe left Marbella to go to Romania prior to his arrest, he had some valuable personal

-16-

properties, a car and some money which belonged to him. He asked my family to sell some of his belongings and to send $100,000 to cover the fees of the lawyer Steven Kartagener. As I said before, I continue to hope and pray that this matter is resolved before it reaches the Court." (See attached 6/17/14 E-mail correspondence between Al Kassar and Stavis with Supporting Affidavit, Exhibit Q).

As of today's date, Stavis has still failed to return Kartagener's $100,000 retainer to Godoy and continues to misrepresent the facts. Stavis does this despite the foregoing evidentiary record which conclusively establishes that he, and perhaps Kartagener, orchestrated a carefully calculated scheme to defraud the defendants out of $100,000.

Wherefore, Godoy now brings forth this Civil Complaint asserting: (1) Breach of Contract; (2) Breach of Fiduciary Duty; and (3) Malpractice; Requesting Compensatory and Punitive Damages in the amount of $500,000. Godoy also files on even date herewith a request for discovery to determine exactly when Kartagener released his retainer to Stavis, who filed the "Notice of Appeal" and paid its $455.00 filing fee, and whether Kartagener actually requested security clearance as alleged. These facts are directly relevant to the instant cause of action to determine when the fraudulent scheme started, and whether Kartegener is liable for fraud rather than just for failing to render the promised services and releasing the $100,000 without authorization.

THE COMPLAINT

1). BREACH OF CONTRACT

To prevail on a breach of contract claim under New York law, a plain-
tiff must prove: (1) the existence of a contract; (2) performance of the con-
tract by one party; (3) breach of the other party; and (4) damages resulting
from the breach. Terwilliger v. Terwilliger, 206 F.3d 240 (2nd Cir. 2000);
See also Total Plan Corp. of Am. v. Colborne, 14 F.3d 824 (2nd Cir. 1994)
(applying New York Choice of law rules to a breach of contract and determin-
ing that the contract should be interpreted under New York law.).

Under New York law, a written contract is to be interpreted so as to
give effect to the intention of the parties as expressed in the unequivocal
language they have employed. See Breed v. Insurance Co. of North America,
46 N.Y. 2d 351, 355, 413 N.Y.S. 2d 352, 385 N.E. 2d 1280 (1978). Construing
an unambiguous contract provision is a function of the Court, rather than a
jury, and matters extrinsic to the agreement may not be considered when the
intent of the parties can be fairly gleaned from the face of the instrument.
See Teitelbaum Holdings, Ltd. v. Gold, 48 N.Y. 2d 51, 56, 421 N.Y.S. 2d 556,
396 N.E. 2d 1029 (1979). A Court may neither rewrite, under the guise of
interpretation, a term of the contract when the term is clear and unambig-
uous. Fiore v. Fiore, 46 N.Y. 2d 971, 973, 415 N.Y.S. 2d 826, 389 N.E. 2d
138 (1979), nor redraft a contract to accord with its instinct for the dis-
pensation of equity upon the facts of a given case. See Devanzo v. Newark
Ins. Co., 44 A.D. 2d 39, 43, 353 N.Y. S2d 29 (2d Dept. 1974), aff'd, 37
N.Y. 2d 733, 374 N.Y. S.2d 619, 337 N.E. 2d 131 (1975).

Further, the entire contract must be considered, and all parts of it

reconciled, if possible, in order to avoid an inconsistency. See <u>Laba v. Carcy</u>, 29 N.Y. 2d 302 (1971); <u>National Conversion Corp. v. Cedar Bldg. Corp.</u>, 23 N.Y. 2d 621 (1969). <u>Cruden v. Bank of New York</u>, 957 F.2d 961 (2nd Cir. 1992). See also <u>Cable Science Corp v. Rochdale Village Inc.</u>, 920 F.2d 147 (2nd Cir. 1990)(in construing contractual language, "A court should accord that language its plain meaning giving due consideration to the surrounding circumstances [and] apparent purpose which the parties sought to accomplish.") (Quoting <u>Reda v. Eastman Kodak Co.</u>, 233 A.D. 2d 914 (N.Y. App. Div. 1996) ("Effect and meaning must be given to every term of the contract, and reasonable effort must be made to harmonize all of its terms... The contract must be interpreted so as to give effect to, not nullify, its general or primary purpose.").

That said, Godoy asserts that all of the defendants named in this cause of action are liable for Breach of Contract:

i. <u>Roger L. Stavis, Esq.</u>

The clear and unambiguous language of the Agreement prepared by Stavis and signed by Godoy, Al Kassar, and Stavis, created a personal contracted obligation on all parties. That is, the <u>December 9, 2008</u>, agreement clearly states that in return for a "flat fee" of $125,000 Stavis would represent both defendants on appeal all the way to the Supreme Court. (<u>See attached Exhibit A at 1</u>); stating in relevant part:

> "When countersigned by you in the space provided below,
> this letter of agreement will establish the terms which
> you have retained this firm to represent you following
> the jury verdict in your case, <u>United States v. Al Kassar,
> et. al., 07-CR-354 (JSR)</u>. In consideration of our services
> to be rendered, this firm has agreed to waive our regular

-19-

hourly fees of $500 per hour for partner's time
and $325 per hour for associate's time, and in-
stead charge a flat fee of $125,000. Due to your
incarceration and present inability to fund this
retainer, it is anticipated that the retainer
may be paid by a third party or parties. In that
event, you agree and understand that no attorney
client relationship will be established between
any third party and this law firm. Regardless of
the party or parties funding the retainer, you
will be our clients and will have our complete
loyalty with regard to this matter. This flat
fee will cover all post-verdict legal services
provided in connection with this matter, in-
cluding, but not limited to, your appeal of
the conviction and sentence to the United States
Court of Appeals for the Second Circuit, and
Petition for a Writ of Certiorari to the United
States Supreme Court. It will also include all
appellate filing fees and printing costs. The
only expenses and disbursements not included
within the legal fee to be paid will be travel
and lodging expenses." (See attached Exhibit A,
at 1).

Important is the fact that this "Letter of Agreement" (1) was prepared
and signed by all parties prior to the idea of hiring Kartagener as a third
attorney; (2) is addressed to both Godoy and Al Kassar; (3) clearly states
that "when countersigned by you in the space below, this letter of agree-
ment will establish the terms by which you have retained this firm to rep-
resent you; (4) sets a "flat fee of $125,000 for representation on appeal
to include briefing in the Second Circuit and Supreme Court as well as all
relevant filing fees; and (5) is signed by Godoy, Al Kassar, and Stavis.

-20-

(See attached Exhibit A).

Thus, this Agreement sets forth a contractual relationship between the parties requiring that in return for a "flat fee" of $125,000 that Stavis represent both Al Kassar and Godoy (signees) on appeal to the Second Circuit and Supreme Court. Thereby satisfying the "existence of a contract" element (prong one) of the governing legal standard. See Terwilliger v. Terwilliger, 206 F.3d 240 (2nd Cir. 2000).

Godoy and Al Kassar satisfied the terms of the Agreement by immediately paying the $125,000 "flat fee" to Stavis, thereby satisfying the "performance of the contract element"(prong two) of the governing legal standard. See Terwilliger, supra.

Stavis breached the terms of the Agreement by failing to provide both "signees" representation on appeal for $125,000, and instead requiring an additional $100,000 to represent Godoy. (See Stavis's 1/29/10 letter, attached Exhibit C); (See also Background Section and Exhibits F, G, H, J and K). Stavis further breached the terms of the Agreement by allegedly establishing an attorney client relationship with the third party who paid the retainer when he claimed in his February 23, 2010, letter (attached Exhibit F), that: "You also wrote that you are 'concerned' about terminating your contract, with Steven Kartagener, particularly the retainer fund and the 'person who provided it.' Let me assure you that I have consulted with that person and he is very happy and satisfied that I am representing you. He already knows that Mr. Kartagener has refunded the retainer to me and I am using it to represent you on this appeal." (See attched Exhibit F).

The second paragraph of the signed Agreement clearly states that Stavis will represent both co-defendants on appeal for a "flat fee" of $125,000 and that: "Due to your incarceration and present inability to fund this retainer, it is anticipated that the retainer may be paid by a third party or parties. In that event, you agree and understand that no attorney client relationship will be established between any third party and this law firm. Regardless of the party or parties funding the retainer, you will be our clients and will have our complete loyalty to this matter." (See attached Exhibit A, at 1).

Thus, Stavis breached two separate terms of the Agreement when he failed to provide representation to the signees for the "flat fee" of $125,000, and by misappropriating loyalty and establishing an attorney client relationship with the third party payee. Thereby satisfying the "breach by the other party" element (prong three) of the governing legal standard. Terwilliger, supra.

Finally, damages incurred when: (1) Stavis failed to return Kartagener's $100,000 retainer, money funded by selling off all of Godoy's personal belongings, (See attached Exhibit Q); (2) when Godoy was denied his Sixth Amendment right to attorney of choice and effective assistance of counsel, (See Background Section at 12-13, see also Related § 2255 Memorandum); (3) when Godoy had to hire a paralegal to help him prepare this Complaint and his related § 2255, and pay the inherent filing fees and other expenses; and (4) when Godoy suffered, and continues to suffer unmeasureable emotional distress as a result of Stavis's actions, as evinced through the numerous

-22-

pieces of attached correspondence. Thereby satisfying the "damages" element (prong four) of the governing legal standard and establishing a claim for "Breach of Contract" against Roger L. Stavis, Esq.

ii. Galett Dreyer & Berkey, LLP

The defendants in this case include not only Roger L. Stavis, but his law firm Galett Dreyer & Berkey, LLP. The firm is equally liable for breach of contract because the Agreement in dispute is signed under the Firm's letterhead and specifically states: "This letter of agreement will establish the terms by which you have retained this firm to represent you following the jury verdict in your case, United States v. Al Kassar, et. al., 07-CR-354 (JSR)." (See attached Exhibit A, at 1.)

At all times relevant to this cause of action Roger L. Stavis was acting in the course of his employment for Gallet Dreyer & Berkey, LLP, and therefore the Firm is equally liable for breach of contract. See In re Am. Med. Utilization Mgmt. Corp., 494 B.R. 626 (E.D.N.Y. 2013)("It is well settled that... a law firm is liable for actions taken by an attorney of the firm who was acting in the course of his employment."); See also Calloway v. Marvel Entertainment Group, Div. of Cadence Industries Corp., 854 F.Supp. 684 (S.D.N.Y. 1986); 854 F.2d 1452 (2nd Cir. 1987)(Firm liable for all documents signed under their letterhead.).

iii. Steven R. Kartagener, Esq.

Steven R. Kartagener is also liable for breach of the contract he signed with Godoy and Al Kassar on February 11, 2009. (See attached Exhibit B.) This contract states in relevant part:

-23-

"When countersigned by you in the space provided
below, this letter of agreement will establish the
terms by which you have retained me to represent you
on your appeal to the United States Court of Appeals
for the Second Circuit from the Judgment of conviction
entered against you in United States v. Al Kassar, et.
al., 07-CR-354 (JSR). There will be a retainer in the
amount of $100,000, which will cover all legal services
that I may provide you in connection with this appeal.
Due to your incarceration and present inability to fund
this retainer, it is anticipated that the retainer may
be paid by a third party or parties. This $100,000
fee will cover all post-verdict legal services provided
in connection with this matter, including, but not
limited to, your appeal of the conviction and sentence
to the United States Court of Appeals for the Second
Circuit, and a Petition for a Writ of Certiorari to
the United States Supreme Court." (See attached
Exhibit B, at 1.).

Per the plain terms of this agreement Godoy had a duty to pay the
$100,000 retainer, and Kartagener had the duty to provide representation
on appeal. Id.

Godoy performed his duty by immediately paying the $100,000 retainer.
However, Kartagener breached the terms of the agreement by failing to pro-
vide the promised representation on appeal. Id.

Godoy incurred damages when Kartagener failed to return the $100,000
to Godoy or the third party payee, money funded by selling off all of
Godoy's personal belongings. (See attached Exhibit Q), (2) when Godoy was
denied his Sixth Amendment right to attorney of choice and effective assist-
ance of counsel, (See Background Section at 12-13, see also related § 2255

-24-

Memorandum); (3) when Godoy had to hire a paralegal to help him prepare this Complaint and his related § 2255, and pay the inherent filing fees and other expenses; and (4) when Godoy suffered, and continues to suffer unmeasurable emotional distress as a result of Kartagener's actions, as evinced through the numerous pieces of attached correspondence.

For all of the aforementioned reasons, Godoy asserts that he has satisfied the four prongs of the governing legal standard establishing a claim for "Breach of Contract" against Steven R. Kartagener, Esq.

2). BREACH OF FIDUCIARY DUTY

To establish a claim for Breach of Fiduciary Duty, a plaintiff must prove: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant constituting a breach of fiduciary duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's misconduct. See Soley v. Wasserman, 823 F.Supp. 2d 221, 232, (S.D.N.Y. 2011)(quoting Soko Holdings Inc. v. BMB Munai, Inc., 726 F.Supp. 291, 305-06 (S.D.N.Y. 2010).

A fiduciary relationship exists under New York law when one person is under a duty to act for or give advice for the benefit of another upon matters within the scope of relation. See Berman v. Sugo, LLC, 580 F.Supp. 2d 191, 204 (S.D.N.Y. 2008).

Rather than determining the existence of fiduciary relationship by recourse to rigid formulas, New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first. See Litton v. Indus.,

-25-

v. Lehman Bros. Kuhn Loeb Inc., 767 F.Supp. 1220, 1231 (S.D.N.Y. 1991).

The calculation of damages in Breach of Fiduciary Duty cases is predicated upon the type of misconduct in which the fiduciary engaged. See Negrin v. Kalina, 2013 U.S. Dist. LEXIS 178403 (S.D.N.Y. 12/17/13). When the plaintiff seeks money damages, she must establish that the alleged breach of fiduciary duty was both a "but for" and "proximate cause of damages." See Soley, supra, 823 F.Supp. 2d at 232.

In a cause of action for Breach of Fiduciary Duty that sounds in fraud, the plaintiff must prove: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury. See Lama Holding Co v. Smith Barney Inc., 88 N.Y. 2d 413 (N.Y. App. 1996). New York requires that where the cause of action is based upon fraud the circumstances constituting the wrong shall be stated in detail." N.Y.C.P.L.R. §3016.

i. Roger L. Stavis, Esq.

In respect to the first three prongs necessary to establish a Breach of Fiduciary Duty Claim: (1) Stavis had a fiduciary relationship with Godoy as his attorney and per contract; (2) Stavis breached his fiduciary duty by failing to provide representation on appeal for the promised $125,000 flat fee, by relinquishing Kartagener of his $100,000 retainer without permission, by failing to return the $100,000 upon Godoy's numerous requests, and for failing to provide Godoy with effective representation on appeal; and (3) Stavis directly caused Godoy damages through his misconduct when (i) he

failed to return Kartagener's $100,000 retainer to Godoy; (ii) when he denied Godoy of his Sixth Amendment right to attorney of choice and effective assistance, (iii) when Godoy had to hire a paralegal to help him prepare this Complaint and pay the inherent filing fees and other expenses, and (iv) when Godoy suffered, and continues to suffer unmeasurable emotional distress.

When it comes to establishing fraud, Stavis has continuously misrepresented the facts and billing arrangements in this case by claiming that the December 9, 2008, contract did not include representation of Godoy on appeal for the $125,000 flat fee, and by claiming that Godoy, Al Kassar, and the third party all gave him permission to obtain and keep Kartagener's $100,000 retainer. (See Background Section at 5-17).

Stavis has also continuously misrepresented the fact that it would be a considerable amount of additional work to represent both Godoy and Al Kassar on appeal when he filed exact "duplicate briefs" on both of their behalfs. (See Background Section at 7-8).

Stavis intentionally attempted to manipulate Godoy into thinking that Stavis had not already agreed and been paid $125,000 to jointly represent both co-defendants on appeal. (See Background Section at 7). Stavis continued this manipulation/deception by failing to acknowledge Godoy's numerous references to the December 9, 2008, contract, and by even using the delayed appeal in an attempt to persuade Godoy into agreeing to allow him to keep Kartagener's $100,000 retainer. (See Background Section at 7-8).

Stavis intentionally fabricated a false record in this case with his correspondence to the co-defendants and by filing a frivolous "Notice of Appearance as Substitute Counsel for Kartagener." (See Background Section at 9-10). All of these documents were purposefully designed to perpetuate the fraudulent scheme. That is, as clearly evinced by all of the attached

-27-

documents, Stavis's correspondence starting on January 29, 2010, were all carefully drafted with the purpose of creating the impression that Stavis was just then being hired to represent Godoy on appeal. (See Background Section at 7-17).

Stavis does this despite the fact that the record in this case clearly shows that Stavis: (1) was already the attorney of record for Godoy; (2) had already agreed and been paid to represent Godoy on appeal as attorney number one; (3) that Kartagener was only hired as a third attorney on top of Stavis and Sorkin; (4) that Stavis was not authorized to relinquish Kartagener of his $100,000 retainer; (5) that Stavis was not given permission to keep Kartagener's retainer; and (6) that Stavis failed to return Kartagener's $100,000 retainer despite Godoy's numerous requests. (See Background Section at 5-17).

It should also be noted again that there appears to be a pattern in this case indicating that Stavis was more concerned with making as much money as he could than in providing a meaningful defense for Godoy. That is, as mentioned in the Background Section as well as in the pending § 2255 Petition, Claims 6-7, Stavis also failed to call two crucial witnesses during trial just because of a fee dispute. Godoy pointed out with support that both experts had been authorized and funded by co-defendant Al Kassar, and that there was a pattern in this case indicating that the attorneys were more concerned with keeping as much money as possible rather than providing meaningful defenses for their clients. (See Background Section at 13).

Finally, Godoy points out that it is possible than Stavis's fraudulent

scheme goes all the way back to the initial hiring of Kartagener. That is, on even date herewith Godoy has also filed a "Request for Relevant Discovery Materials Pursuant to Fed.R.Civ.P. 26(d)(1)." Id.

Within this Discovery Motion Godoy requests that both Stavis and Kartagener be required to provide their banking records showing exactly when Kartagener received his $100,000 retainer and when he released it to Stavis. If it turns out that Kartagener released his retainer, or a portion thereof, prior to his alleged inability to get security clearance, then it will show a larger fraudulent scheme that includes Kartagener. (Criminal Conspiracy).

Godoy also requests that Kartagener provide proof that he did in fact file for security clearance as alleged, and that the Court provide documentation showing who paid Godoy's $455.00 filing fee for the appeal. If it turns out that Kartagener never filed a request for security clearance then it will prove the larger fraudulent scheme alleged above. If it turns out that Stavis paid the $455.00 filing fee for Godoy, then it will prove that Stavis was coherent of his December 9, 2008 contractual obligation to represent Godoy on appeal under the $125,000 flat fee. Meaning that all of Stavis's later correspondence with Godoy, the Court, and Al Kassar, are direct evidence of fraud and even perjury. (emphasis added).

And as before, Godoy suffered damages when (1) Stavis failed to return Kartagener's $100,000 retainer, money funded by selling off all of Godoy's personal belongings, (See attached Exhibit Q); (2) when Godoy was denied his Sixth Amendment right to attorney of choice and effective assistance of counsel, (See Background Section at 12-13, see also related §2255 Memorandum);

(3) When Godoy had to hire a paralegal to help him prepare this Complaint and his related § 2255, and pay the inherent filing fees and other expenses; and (4) when Godoy suffered, and continues to suffer unmeasurable emotional distress as a result of Stavis's actions, as evinced through the numerous pieces of attached correspondence. Thereby establishing a meritorious Breach of Fiduciary Duty Claim against Roger L. Stavis, Esq.

## ii. Galett Dreyer & Berkey, LLP.

As mentioned previously, because during all times relevant to this cause of action Stavis was acting in the course of his employment for Gallet Dreyer & Berkey, LLP, the Firm is equally liable for Breach of Fiduciary Duty. See In re Am. Med. Utilization Mgmt. Corp., 494 B.R. 626 (E.D.N.Y. 2013)("It is well settled that a law firm is liable for actions taken by an attorney of the firm who was acting in the course of his employment."); see also Calloway v. Marvel Entertainment Group, Div. of Cadence Industries Corp., 854 F.Supp. 684 (S.D.N.Y. 1986); 854 F.2d 1452 (2nd Cir. 1987)(firm liable for all documents signed under their letterhead.).

## iii. Steven R. Kartagener, Esq.

In respect to the three prongs necessary to establish a breach of Fiduciary Duty Claim: (1) Kartagener had a fiduciary duty relationship with Godoy as his attorney and per contract; (2) Kartagener breached his fiduciary duty by failing to provide the promised representation on appeal and by releasing his $100,000 retainer to Stavis without Godoy's release consent; and (3) Kartagener directly caused Godoy damages through his misconduct by (i) costing Godoy the $100,000 retainer that Stavis failed to return, (ii) by denying Godoy of his requested fresh set of eyes (third

attorney services) on appeal, (iii) by costing Godoy the fees inherent
with filing this Complaint, including the hiring of a paralegal to prepair
the Complaint and related filings, and (iv) by causing Godoy unmeasurable
emotional distress.

In addition, as mentioned previously, the application of the discovery
rules to this case may turn up evidence that implicates Kartagener in a
joint scheme to defraud Godoy. Thus, Godoy preserves herein his right to
expand the Complaint to include this challenge.

3. MALPRACTICE

To sustain a claim for legal malpractice in New York, a plaintiff must
demonstrate: (1) the attorney failed to exercise the ordinary reasonable
skill and knowledge commonly possessed by a member of the legal profession;
(2) which results in actual damages to a plaintiff; and (3) that the plain-
tiff would have succeeded on the merits of the underlying action "but for"
the attorney's negligence. See Am. Base Corp. v. Davis Polk & Wardwell,
8 N.Y. 3d 428 (2007).

i. Roger L. Stavis, Esq.

Godoy asserts that Stavis is liable for Malpractice because he denied
Godoy of his Sixth Amendment right to effective assistance during both the
trial and direct appeal proceedings. As noted in the Background Section at
12-13, Godoy has a related § 2255 Motion pending in this Court where he has
asserted numerous claims of ineffective assistance of counsel. (Case No.
13-CV-2383).

These claims of ineffective assistance are directly relevant to est-
ablishing malpractice. In the interest of brevity, Godoy relies on his

briefing in the § 2255 proceedings to support his claims herein, incorp-
orating by reference each of the following claims: § 2255 CLAIM FOUR:
Trial Counsel Was Ineffective for Failing to Move for Severance so Moreno-
Godoy Could Be Tried Separately From Al Kassar (§ 2255 Memorandum at 57, 52,
Objections to R&R at 7-11); § 2255 CLAIM SIX: Trial Counsel Was Ineffective
For Failing to Move to Exclude the Recorded Conversations on Alteration and
Unreliability Grounds, Rule of Completeness Grounds, and for Failing to
Introduce Available Expert Testimony in Support of Said Arguments (§ 2255
CLAIM SEVEN: Trial Counsel Was Ineffective for Failing To Call Weapons
Expert Who Was Discovered Prior To Trial and Could Have Provided the Much
Needed Expert Opinion on the Alleged Weapons Deal and the Co-defendant's
Real Level of Involvement Without Being Excluded (§ 2255 Memorandum at 94-
102, Objections to R&R at 15-18); § 2255 CLAIM TWELVE: Trial Counsel Was
Ineffective for Violating the Petitioner's Right to Attorney of Choice, and
in the Process Taking and Keeping Funds That Were Not Authorized (§ 2255
Memorandum at 137-143, Objections to R&R at 27-32); § 2255 CLAIM THIRTEEN:
Trial Counsel Was Ineffective for Failing to Make Separate and Distinct
Arguments to the Jury and Appeals Court that Moreno-Godoy Was Not a Knowing
Participant in a Conspiracy to Sell a Terrorist Organization Weapons (§ 2255
Memorandum at 143-147, Objections to R&R at 32-37); and § 2255 CLAIM FOURTEEN:
Counsel Violated the Petitioner's Sixth Amendment Right to Conflict Free
Representation by Focusing Their Efforts on Al Kassar and in the Process
Denied Moreno-Godoy of Available and Meaningful Defenses to the Charged Crimes.
(§ 2255 Memorandum at 147-152, Objections to R&R at 41.)

　　The common denominator between these claims and their relevancy to the

instant cause of action, is that they identify a pattern showing that counsel was more concerned with making as much money as possible than providing a meaningful defense for their clients. Indeed, as clearly set forth in the above listed § 2255 claims, Stavis failed to present crucial expert testimony during trial just because of a fee dispute with the experts. Id. He also failed to try the case separate from Al Kassar because it would have been twice the amount of work, and failed to present existing meritorious defenses on Godoy's behalf during trial and direct appeal. Id.

Although Stavis fraudulently portrayed that it was going to be much more work to represent both Godoy and Al Kassar on appeal - he filed exact "duplicate briefs" on their behalfs. Meaning that Stavis did one brief and just changed the name and address on the cover page. (See Background Section at 7-8).

Had Stavis presented the expert testimony, tried the case separate from Al Kassar, and raised Godoy's separate and distinct defenses during both trial and on direct appeal, there is very high probability that Godoy would not stand convicted. Furthermore, had Stavis not perpetrated the fraudulent scheme involving the $100,000 retainer funded for a third attorney (fresh set of eyes) it is very probable that Godoy's individual perspective would have been properly advocated on appeal, which would have resulted in the vacatur of his convictions. Furthermore, Godoy would not have outright lost the $100,000 and other relevant expenses, and would not have suffered the unneeded emotional distress during an already stressful time. (emphasis added).

ii. Gallet Dreyer & Berkey, LLP

As it was previously, during all times relevant to this claim Stavis was operating under the Firm's letterhead and was acting in the course of his

-33-

employment for Gallet Dreyer & Berkey, LLP. Thus, the Firm is equally liable
for Malpractice. See In re Am. Med. Utilization Mgmt. Corp., 494 B.R. 626
(E.D.N.Y. 2013)("It is well settled that a law firm is liable for actions
taken by an attorney of the firm who was acting in the course of his employ-
ment."); See also Calloway v. Marvel Entertainment Group, Div. of Cadence
Industries Corp., 854 F.Supp. 684 (S.D.N.Y. 1986); 854 F.2d 1452 (Firm liable
for all documents signed under their letterhead.).

### iii. Steven R. Kartagener, Esq.

Kartagener is liable for Malpractice because: (1) he failed to provide
the services promised per his February 11, 2009 contract; and (2) for re-
leasing his $100,000 retainer to Stavis without release consent from either
co-defendant (signee). Id.

Godoy asserts that he was severely prejudiced by Kartagener's negligence
as he was denied the services of a third attorney (fresh set of eyes) which
very likely cost him his appeal, would not have outright lost the $100,000
and other relevant expenses, and would not have suffered the unneeded emotion-
al distress during an already stressful time. (emphasis added)

### IN CONCLUSION WITH DAMAGES REQUESTED

The bottom line is that both Stavis (acting under the Firm's letterhead),
and Kartagener, violated not only Godoy's substantial Constitutional rights,
but also their own serious ethical duties under both the ABA and the New York
Code of Professional Responsibility. Id.

Godoy suffered significant damages from these failures, as he: (1) lost
the $100,000 paid to Kartagener; (2) was denied services as well as effective

-34-

representation; (3) suffered the additional cost of having to hire a paralegal and file these related pleadings; and (3) suffered an unmeasurable amount of emotional distress during an already stressful time.

    <u>Wherefore</u>, Godoy respectfully requests the following damages:

(1) $500,000 in Compensatory and Punitive Damages, and ...

(2) That both Stavis and Kartagener be Disbarred for Life.

<u>DECLARATION</u>

    I hereby declare in affidavit form pursuant to <u>28 U.S.C. § 1746</u>, that all of the foregoing facts are true and correct, and that I placed this Complaint in the prison Mailing System, certified mail, postage prepaid, on this __30__ day of July, 2014.

Respectfully,

Luis Felipe Moreno-Godoy
#60461-054
FCI Talladega
PMB 1000
Talladega, AL 35160

-35-

PROOF OF SERVICE

    I hereby certify that I have served a copy of this Complaint on the Defendants by placing said in the prison mailing system, certified mail, postage prepaid, and addressed to the following:


Gallet Dreyer & Berkey, LLP
Attorneys at Law
845 Third Avenue – 8th Floor
New York, NY 10022-6601


Roger L. Stavis, Esq.
845 Third Avenue – 8th Floor
New York, NY 10022-6601


Steven R. Kartagener, Esq.
233 Broadway
Suite 2340
New York, NY 10279


on this __30__ day of July, 2014.


Respectfully,

Luis Felipe Moreno-Godoy
Fed. Reg. 60461-054
FCI Talladega
PMB 1000
Talladega, AL 35160

-36-